[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 29, 2005
THOMAS K. KAHN
CLERK

No. 04-16691
Non-Argument Calendar

_____

Agency No. A79-451-388

MOHAMMAD IMRAN BUTT,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 29, 2005)

Before HULL, WILSON  and FAY, Circuit Judges.

PER CURIAM:

Mohammad Imran Butt, a Pakistani national, petitions for review of the Board of Immigrations Appeals's ("BIA's)" decision affirming without opinion the Immigration Judge's order of removal and withholding of removal claims. Butt argues that the totality of circumstances support his fear of persecution if returned to Pakistan and establish a clear probability of persecution as required to qualify for withholding of removal. For the reasons stated more fully below, we deny the petition for review.

Butt entered the United States on May 15, 2001, as a non-immigrant visitor for pleasure with authorization to stay until November 15, 2001, and was issued a notice to appear, charging Butt with removability under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for being present in the United States for a longer time than permitted. On February 26, 2003, Butt filed an application for asylum and withholding of removal, alleging persecution on account of his political opinion and membership in a particular social group, as well as relief under CAT. The Immigration and Naturalization Services ("INS")[1] later added two more charges of removability, first for being in a class of aliens inadmissible by the law existing at the time of entry, i.e., aliens who had procured or sought to procure a visa by fraud,

---

[1] It is noted that the INS is now a part of the Department of Homeland Security. For convenience, it is referred to in this opinion as the INS. See Sepulveda v. United States Attorney Gen., 401 F.3d 1226, 1228, n.1 (11th Cir. 2005).

INA § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A), and second, for having been convicted of a crime involving moral turpitude within five years of admission for which a sentence of one year or longer may be imposed, INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i).

Butt's application for asylum and withholding of removal indicated that he had not suffered any past persecution, but alleged that if he were returned to Pakistan after living in the United States for three years, he would be viewed as a traitor by anti-American extremist groups that would mistreat him physically and mentally. He also feared he would be tortured by the same extremist groups. Butt further indicated that he had filed his asylum application beyond the one-year filing deadline because of the worsening political and social climate following the terrorist attacks of September 11, 2001.

Included in the administrative record was the State Department's Pakistan Country Report on Human Rights Practices, issued March 31, 2003. Nothing in that report, however, specifically mentions anti-American extremist groups committing acts of persecution or torture. Neither does the 1997 "Profile of Asylum Claims and Country Conditions" published by the Bureau of Democracy, Human Rights, and Labor. Finally, the record reflects that on June 30, 2002, Butt was convicted in the United States District Court for the Southern District of Florida for knowingly possessing an unlawfully obtained non-immigrant visa, a

3

violation of 18 U.S.C. § 1546(a). He was sentenced to time served.

Butt admitted to the allegations and charges of removability. At his hearing, Butt indicated that he arrived in the United States in May 2001 using a visitor visa that he purchased in Qatar, Saudi Arabia. Butt left Pakistan in 1993 and began living and working in Qatar for seven or eight years. Prior to leaving for Qatar, Butt lived with his family, and he has a brother and a sister who still reside in Pakistan. While living in Pakistan and Qatar, Butt was not a member of any political or social groups, was not a member of any terrorist groups, and was never arrested. Butt testified that he is a practicing Muslim, but indicated that no governmental authority ever interfered with his practice of religion.

When asked why he sought asylum in the United States, Butt testified that he feared fundamentalist Muslim extremists who would hate him because he was pro-American. Butt further stated that the extremists know that he is pro-American because the FBI had publicized him on television and in newspapers. Butt explained that the FBI arrested him on suspicion that he was a member of Al-Qaeda and questioned him, but never brought any formal charges with regard to terrorist activities. He was, however, charged with procuring a fraudulent visa and sentenced to time already served. Butt testified that, following his arrest, newspapers ran stories with his name and picture indicating that a Pakistani had been arrested and was suspected of terrorist activities, and he further indicated that

4

one of his friends recorded a television news broadcast that also featured his name and picture.

Butt testified that he knew of one Pakistani friend named Malik who was deported back to Pakistan, but did not know if anything had happened to him. When further questioned, Butt indicated that he did not know of any instances where Pakistanis, after being deported from the United States to Pakistan, faced problems because of their time spent in the United States. The IJ then asked Butt how anyone in Pakistan would have seen him on television or in newspapers, and Butt responded that he was in the media in Qatar and in Pakistan, but he could not produce any newspaper clippings or recordings of local television there. He also admitted that he had never personally seen these reports. Again, Butt was asked what he thought would happen to him if returned, to which he responded, "[t]hey will hate me or they will . . . punish me about - - for that, that I like America[] and I lived over there." He said that he feared being hit or killed. Finally, Butt admitted that he was a Sunni Muslim, and that Sunni Muslims comprise nearly 85% of the Pakistani population.

The IJ issued an oral decision, and found that Butt was removable as charged under INA §§ 237(a)(1)(B) (being present in the United States for a longer time than permitted), 237(a)(1)(A) (being an alien inadmissible by existing law at the time of entry), and 237(a)(2)(A)(i) (being convicted of a crime of moral

5

turpitude).  The IJ went on to deny Butt's asylum claim, finding that Butt failed to

provide any evidence that he made pro-American comments that were published in

Qatar or Pakistan, nor had he tendered, despite having had seven months to procure

them, any proof of the reports to corroborate his claim.  It found Butt's testimony

regarding asylum was "extremely generalized and meager" and, therefore, found

that Butt had failed to meet his burden of proof with respect to asylum.[2]  Because

he could not meet his burden of proof for asylum, the IJ found that Butt could not

meet the higher standard for withholding of removal.  Finally, the IJ found that

Butt failed to show that it was more likely than not that he would be tortured if

returned to Pakistan and denied CAT relief.  The BIA affirmed without opinion.

Because Butt's removal proceedings commenced after April 1, 1997, the

effective date of IIRIRA, this case is governed by the permanent provisions of the

INA, as amended by IIRIRA.  Gonzalez-Oropeza v. U.S. Attorney Gen., 321 F.3d

1331, 1332 (11th Cir. 2003).[3]  We will review only the Board's decision, except to

---

[2] The IJ noted that Butt had arrived in May 2001, but did not file his application for asylum until February 26, 2003.  This would appear to have made Butt's application untimely because it was filed more than one year after entry into the United States.  See INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B).  This issue was not addressed in the IJ's decision and, thus, the IJ apparently found that Butt's asylum claim was either timely filed or he had met his burden of proving changed conditions.  See INA § 208(a)(2)(D), 8 U.S.C. § 1158(a)(2)(D).

[3] Pursuant to the REAL ID Act of 2005, this distinction appears to be irrelevant, as the Act provides that all petitions for review "filed under former section 106(a) of the Immigration and Nationality Act (as in effect before its repeal by section 306(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1252 note)) shall be treated as if it had been filed as a petition for review under section 242 of the Immigration and Nationality Act

the extent that it expressly adopts the IJ's opinion. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted). Insofar as the Board adopts the IJ's reasoning, we will review the IJ's decision as well. Id. (citation omitted).

On appeal, Butt argues that the totality of the circumstances, including the continued instability of the Middle East, the war on terror being waged in the Muslim world, and the resulting anti-American sentiment of fundamentalist extremists, support Butt's reasonable fear of future persecution if returned to Pakistan. Because he has lived in the United States for a substantial amount of time, he argues that it is reasonable to fear that he would persecuted by extremists who would associate him with the United States. He also argues that the evidence establishes a clear probability of persecution, as required to qualify for withholding of removal.[4]

To the extent that the IJ's decision was based on a legal determination, review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). The IJ's factual determinations are reviewed under the substantial evidence test, and we "must affirm the [IJ's] decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al

---

(8 U.S.C. 1252)." See Pub. L. 109-13, 119 Stat 231 (May 11, 2005).

[4] Butt does not raise any challenge in his brief to the denial of relief under the CAT and, thus, that issue is deemed abandoned. Sepulveda v. United States Attorney Gen., 401 F.3d 1226, 1228, n.2 (11th Cir. 2005).

Najjar, 257 F.3d at 1283-84 (citation omitted).  Thus, factual determinations "may be reversed by this court only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  Adefemi v. Ashcroft, 386 F.3d 1022, 1026 (11th Cir. 2004).

An alien who arrives in or is present in the United States may apply for asylum.  See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1).  The Secretary of Homeland Security or the Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee."  See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1).[5] A "refugee" is:

> [A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. . . .

8 U.S.C. § 1101(a)(42)(A).  The asylum applicant carries the burden of proving statutory "refugee" status.  See Al Najjar, 257 F.3d at 1284.  To establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past

---

[5] Pursuant to the REAL ID Act of 2005, INA § 208(b)(1), 8 U.S.C. § 1158(b)(1), was amended to add "The Secretary of Homeland Security or the Attorney General" as if enacted on March 1, 2003.  See Pub. L. 109-13, 119 Stat 231 (May 11, 2005), Division B, Sec. 101, 8 U.S.C. § 1158(b)(1) and note (1).

persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor, in this case group membership, will cause such future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. The INA does not expressly define "persecution" for purposes of qualifying as a "refugee." See INA § 101(a)(42), 8 U.S.C. § 1101(a)(42). However, we have discussed other circuits' holdings that "persecution" is an "extreme concept," requiring more than "a few isolated incidents of verbal harassment or intimidation," or "[m]ere harassment." Sepulveda v. United States Attorney Gen., 401 F.3d 1226, 1231 (11th Cir. 2005). "[A]n applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289.

A showing of past persecution creates a presumption of a "well-founded fear," subject to rebuttal by the INS. 8 C.F.R § 208.13(b)(1). A "well-founded fear" of persecution may also be established by showing a reasonable possibility of personal persecution that cannot be avoided by relocating within the subject country. 8 C.F.R. § 208.13(b)(2)(i) & (ii). It is "well-established" that the well-founded fear inquiry contains both an objective and subjective component, i.e., the petitioner must be genuinely afraid and that fear must be objectively reasonable. Al Najjar, 257 F.3d at 1289. Furthermore, it is the petitioner's burden to present "specific, detailed facts showing a good reason to fear that he or she will be singled

9

out for persecution." Id. at 1287 (quotation and citation omitted).

Here, Butt admitted in his application for asylum that he had suffered no past persecution. His two enumerated grounds for asylum were persecution on the basis of his political opinion, presumably his pro-American opinion, and his membership in a particular social group, presumably as a pro-American Pakistani national who had lived in the United States and was deported back to Pakistan. Butt did not pursue asylum on the basis of his religion and, although the IJ addressed the religion issue, it did not err by finding that Butt would not be persecuted on the basis of his religion because the evidence showed that (1) Butt had never suffered any persecution on the basis of his religion, and (2) Butt was a Sunni Muslim, and Sunni Muslims comprised nearly 85% of the Pakistani population.

Turning to Butt's principal claim, i.e., that anti-American extremist groups would persecute him in Pakistan, the administrative record in this case does not compel a reversal because substantial evidence supported the IJ's finding that Butt did not have a well-founded fear of persecution based on either his political opinion or his membership in a social group. Nothing in the Country Reports or the Profile of Asylum report indicated that anti-American extremists were torturing Pakistanis who had spent time in the United States or voiced pro-American opinions. Furthermore, Butt was unable to provide any corroborative evidence to

10

support his assertion that the extremists were aware of his opinions and, notably, he admitted he had not seen any newspapers or television broadcasts in Pakistan or Qatar showing his picture, stating that he was living in the United States, or indicating that he had a favorable view of the United States. He also had no knowledge of mistreatment of any Pakistani who had been deported from the United States back to Pakistan.

Butt's only testimony on point was a general, speculative assertion that, because he lived in the United States and liked the United States, Muslim extremists in Pakistan would hit or kill him. While it is arguable whether Butt met the subjective requirement for a well-founded fear of future persecution, it appears that Butt did not meet the objective requirements because he had no evidence whatsoever to support his claim. See Al Najjar, 257 F.3d at 1289. Where, as here, the applicant's testimony is weak, there is a greater need for corroborative evidence. See In re Y-B-, 21 I&N Dec., 1136, 1139 (BIA 1998). Butt had no specific facts to support his assertions and, therefore, we conclude that substantial evidence supported the IJ's determination that Butt could not meet the requirements for asylum.

Finally, an alien seeking withholding of removal under the INA must show that his life or freedom would "more likely than not" be threatened upon return to his country because of, among other things, his political opinion or membership in

11

a particular social group.  See Mendoza v. U.S. Attorney Gen., 327 F.3d 1283,1287 (11th Cir. 2003); INA § 241(b)(3), 8 U.S.C. § 1231.  This standard is more stringent than the "well-founded fear" standard for asylum; thus, because Butt was unable to meet the well-founded fear standard for asylum, he is unable to qualify for withholding of removal.

Based on the foregoing, we conclude that substantial evidence supported the IJ's determination that Butt had failed to prove his asylum claim or qualify for withholding of removal.  Therefore, we deny Butt's petition for review.

**PETITION DENIED.**