Jose Irineo GONZALEZ–OROPEZA, Guadalupe Garcia–Pineda, et al., Petitioners,

v.

U.S. ATTORNEY GENERAL, Immigration and Naturalization Service, Respondents.

No. 02–12706

Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Feb. 19, 2003.

Eduardo A. Canal, Miami, FL, for Petitioners.

Anthony P. Nicastro, David V. Bernal, Andrew C. MacLachlan, Civil Div., Washington, DC, for Respondents.

Before DUBINA, CARNES and WILSON, Circuit Judges.

**1332**

PER CURIAM:

Jose Irineo Gonzalez–Oropeza ("Mr. Gonzalez"), his wife Guadalupe Garcia–Pineda ("Mrs. Gonzalez"), and their son Jose Gonzalez–Garcia ("Jose, Jr.") (hereinafter collectively referred to as "Petitioners"), through counsel, appeal from the Board of Immigration Appeals's ("BIA's") affirmance without opinion of the Immigration Judge's ("IJ's") denial of their applications for cancellation of removal pursuant to § 240A(b) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1229b(b). On appeal, Petitioners argue that the BIA violated their due process rights by issuing an affirmance without opinion ("AWO") pursuant to 8 C.F.R. § 3.1(a)(7), because their appeal was not appropriate for an AWO. They claim that the IJ failed to properly consider the facts and equities presented. Further, they allege that on appeal the BIA failed to perform an individualized analysis of the facts of the case and that the BIA's holding was "so fundamentally deficient that it constitutes a denial of due process."

■ We review subject matter jurisdiction *de novo. Brooks v. Ashcroft,* 283 F.3d 1268, 1272 (11th Cir.2002). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. 104–208, 110 Stat. 3009 (1996) ("IIRIRA"), amended the INA's provisions for deportation (renamed "removal") and judicial review thereof, enacting new judicial-review provisions in INA § 242, now codified at 8 U.S.C. § 1252, which are commonly known as the IIRIRA permanent rules. *See Akinwale v. Reno,* 216 F.3d 1273, 1276 (11th Cir.2000). Most IIRIRA provisions apply only to deportation proceedings commenced on or after April 1, 1997. *See Farquharson v. United States Attorney Gen.,* 246 F.3d 1317, 1320 (11th Cir.2001). Because proceedings against petitioners were instituted after April 1, 1997, IIRI-RA's permanent rules apply to this case. *See Moore v. Ashcroft,* 251 F.3d 919, 922 (11th Cir.2001).

The Attorney General ("AG") has discretion to cancel the removal of a non-permanent resident if that alien has (A) a continuous physical presence of not less than 10 years, (B) good moral character, (C) a lack of certain criminal convictions, and (D) establishes exceptional and extremely unusual hardship to a qualifying relative. INA § 240A(b), 8 U.S.C. § 1229b(b). INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B), sets limits on judicial review of certain discretionary decisions made in immigration proceedings.

> Notwithstanding any other provisions of law, no court shall have jurisdiction to review—
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), *1229b,* 1229c, or 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B) (emphasis added).

■ Because this case involves "the granting of relief under section ... 1229b," this jurisdictional bar is implicated in this case. In *Najjar v. Ashcroft,* 257 F.3d 1262 (11th Cir.2001), we explored § 1252(a)(2)(B)'s predecessor in the IIRIRA transitional rules, § 309(c)(4)(E), and held that that section precludes appellate review of discretionary decisions, but does not preclude review of non-discretionary legal decisions that pertain to statutory eligibility for discretionary relief. *Najjar,* 257 F.3d at 1297–98. We determined that a substantially similar extreme-hardship decision was a discretionary decision that

we could not review. *Id.* Therefore, the exceptional and extremely unusual hardship determination is a discretionary decision not subject to review.

 Notwithstanding this jurisdictional bar, however, we have stated that § 1252(a)(2)(B) allows review of substantial constitutional challenges to the INA. *Moore,* 251 F.3d at 923–24. Where a constitutional claim has no merit, however, we do not have jurisdiction. *See Brooks,* 283 F.3d at 1273. In order to establish a due process violation, an alien must show that he was deprived of liberty without due process of law, *see Mathews v. Diaz,* 426 U.S. 67, 77, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976), and that the asserted error caused him substantial prejudice, *see Ibrahim v. United States INS,* 821 F.2d 1547, 1550 (11th Cir.1987).

 Petitioners argue that they raise a substantial constitutional question because they claim that the BIA violated their due process rights by granting an AWO when their appeal was not suitable for the AWO procedure. Pursuant to 8 C.F.R. § 3.1(a)(7), a single member of the BIA may affirm, without opinion, the decision of the IJ if that Board member determines that the result was correct and that any errors were harmless and immaterial, and "that (A) the issue on appeal is squarely controlled by existing ... precedent ...; or (B) the factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted." 8 C.F.R. § 3.1(a)(7)(ii). Such an order does not necessarily imply approval of all of the reasoning of the IJ's decision, but does signify that any errors were harmless or immaterial. 8 C.F.R. § 3.1(a)(7)(iii). The decision of the IJ becomes the final agency decision. *Id.* Thus, under the regulations, no entitlement to a full opinion by the BIA exists. As the Supreme Court has made clear, "administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978) (quotations omitted).

 The BIA's decision in this case was in full compliance with the regulations, as the issues in this case are not complex, and are governed by existing agency and federal court precedent. Prior to the issuance of this order, the full Board decided two cases that interpreted the "exceptional and extremely unusual" standard. We will defer to the BIA's statutory interpretation if it is reasonable. *Brooks,* 283 F.3d at 1272. In *In re Monreal–Aguinaga,* 23 I & N Dec. 56, 2001 WL 534295 (BIA 2001), the BIA held that the new standard established with the passage of IIRIRA was higher than the "extreme hardship" standard under the previous suspension of deportation provision. The BIA held that only harm to the qualifying relative may be taken into account, and set forth several factors to be considered, including the age, health, and circumstances of the qualifying lawful permanent resident or citizen relatives. *Id.*

Subsequently, in *In re Andazola–Rivas,* 23 I & N Dec. 319, 2002 WL 1001048 (BIA 2002), the Board addressed the case of a single mother who claimed that her removal would cause exceptional and extremely unusual hardship to her 6–year–old and 11–year–old United States citizen children. The record indicated that the respondent had no relatives in Mexico, and that her mother lived in the United States and looked after the children while the respondent worked. *Andazola–Rivas,* 23 I & N Dec. 319–20. All of her siblings, aunts, and uncles also lived in the United States, although without lawful immigration sta-

tus. *Id.* at 320. The respondent claimed that she would not have sufficient economic opportunity in Mexico and that the schools are better in the United States. *Id.* The BIA denied cancellation of removal, holding that economic detriment was not sufficient to establish even a claim for extreme hardship. Also, although the BIA acknowledged that the Mexican schools would not provide an education equal to that received in the United States, the respondent was unable to show that her children would be deprived of all schooling or an opportunity to obtain an education. In light of the fact that her children were still relatively young and in good health, the BIA found that they would be able to make the necessary adjustments to life outside the United States. "While almost every case will present some particular hardship, the fact pattern presented here is, in fact, a common one, and the hardships the respondent has outlined are simply not substantially different from those that would normally be expected upon removal to a less developed country." *Id.* at 324.

The only bases for Petitioners' claim of exceptional and extremely unusual hardship are the quality of education in Mexico and the lack of educational opportunity. This case fell squarely within Board precedent and was proper for an AWO. Petitioners' due process claim lacks merit. They have therefore raised no substantial constitutional questions.

For the foregoing reasons, we conclude that we do not have jurisdiction to consider the petition for review, and therefore the Attorney General's motion to dismiss is hereby

*GRANTED and the appeal is DISMISSED.*