[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13961

Non-Argument Calendar

_____

NAUN RIGOBERTO SAUCEDA MARTINEZ,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A206-612-769

_____

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Nuan Rigoberto Sauceda Martinez, a native and citizen of Honduras, seeks review of the Board of Immigration Appeals' ("BIA") final order adopting and affirming the Immigration Judge's ("IJ") denial of his application for cancellation of removal on the ground that Sauceda Martinez did not show that his removal would result in exceptional and extremely unusual hardship to his U.S. citizen son.[1]  Sauceda Martinez argues that the IJ and the BIA violated his due process rights and incorrectly applied the exceptional and extremely unusual hardship standard by requiring him to prove that the requisite hardship was

---

[1] The Attorney General may cancel the removal of an inadmissible or removable alien and adjust the status of the alien to that of a lawful permanent resident if the alien:

> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B) has been a person of good moral character during such period;
>
> (C) has not been convicted of [certain specified offenses]; and
>
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1).

"unconscionable."[2]  After review, we dismiss the petition for lack of jurisdiction.

## I.      Background

Sauceda Martinez entered the United States without inspection in December 2003.   In 2014, the Department of Homeland Security served Sauceda Martinez with a notice to appear, charging him as removable for being an alien present in the United States without being admitted or paroled.  Sauceda Martinez conceded removability and sought cancellation of removal under 8 U.S.C. § 1229b(b)(1).   In his application, he asserted that his removal would result in exceptional and extremely unusual hardship to his minor son, Ever Sauceda Bardales, who is a U.S. citizen.

In relevant part, at the merits hearing on his application for cancellation of removal, Sauceda Martinez testified that Ever, born in 2007, was his only child.  Sauceda Martinez's relationship with Ever's mother ended in 2011, and Ever lives with his mother and his stepfather in Washington, D.C.  Sauceda Martinez, who lives in Florida, visits Ever twice a year and calls him every day. Sauceda Martinez testified that he provides $350-400 in monthly child support for Ever, but he does so voluntarily and not pursuant to a court order.   Sauceda Martinez explained that

---

[2] Sauceda Martinez acknowledges in his petition for review that, under 8 U.S.C. § 1252(a)(2)(B)(i), we lack jurisdiction to review the IJ's decision as to whether to grant cancellation of removal.

Ever's mother told him that she would not send Ever to visit if Sauceda Martinez were removed to Honduras "because it's very dangerous" and Sauceda Martinez would have to wait for Ever to turn 18 and then Ever could make his own decision about visiting. Sauceda Martinez did not believe that he would be able to provide any monetary support for Ever if he were returned to Honduras because the pay is so low there.   When Sauceda Martinez talked to Ever about Sauceda Martinez's possible deportation, Ever stated he would "be very sad" and he would miss his father.  Sauceda Martinez stated that if he were removed it would negatively affect his son emotionally and financially.

Following the merits hearing, the IJ issued an oral decision denying the application for cancellation of removal.   In his decision, the IJ explained that, for cancellation of removal purposes,

> [t]o establish exceptional and extremely unusual hardship, an applicant must demonstrate that a qualifying relative would suffer hardship that is substantially different from or beyond that which would ordinarily be expected to result from the alien's deportation.  However, he need not show that such hardship would be "unconscionable."

As to Sauceda Martinez's showing of hardship, the IJ noted that because Sauceda Martinez was 37 years old, in good health, and had worked as a welder for 14 years, there was nothing to show that he would be unable to work and support his child from Honduras.  The IJ further explained that the economic detriment

resulting from adverse conditions and the loss of, or difficulty finding, employment in Honduras were normal consequences of deportation and did not justify cancellation of removal. The IJ acknowledged that Ever's separation from Sauceda Martinez would undoubtedly cause a hardship, but that this type of hardship was a normal result of deportation and Sauceda Martinez failed to provide evidence establishing "that his son would suffer hardship that is substantially different from or beyond that which would normally be expected from the deportation of an alien with close family members here."

Sauceda Martinez appealed to the BIA, arguing that he showed exceptional and extremely unusual hardship, that the IJ did not weigh properly all of the relevant factors, and that he was not required to show that the hardship would be "unconscionable." The BIA adopted and affirmed the IJ's decision and dismissed the appeal, finding that the IJ properly considered the relevant factors related to hardship, and the BIA "agree[d] that the child's hardship would not be substantially beyond that typically resulting from a family member's removal." The BIA noted that, "[a]s significant a hardship as it is, family separation in and of itself does not meet the high standard of exceptional and extremely unusual hardship." Accordingly, the BIA dismissed the appeal. We now turn to the claim raised in Sauceda Martinez's petition for review.

6                    Opinion of the Court                    20-13961

## II.        Discussion

Sauceda Martinez argues that the IJ and the BIA violated his due process rights and misapplied the exceptional and extremely unusual hardship standard by requiring him to show that the hardship would be unconscionable.

We review only the decision of the BIA, except to the extent that it adopts the IJ's decision or expressly agrees with the IJ's reasoning. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). When the BIA explicitly agrees with the findings of the IJ, we will review the decisions of both the BIA and the IJ as to those issues. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010). "We review constitutional challenges, including alleged due process violations, *de novo*." *Alhuay v. U.S. Att'y Gen.*, 661 F.3d 534, 548 (11th Cir. 2011) (quotation omitted).

As Sauceda Martinez concedes, 8 U.S.C. § 1252(a)(2)(B)(i) precludes our review of "any judgment regarding the granting of relief under . . . [8 U.S.C. §] 1229b"—including cancellation of removal. 8 U.S.C. § 1252(a)(2)(B)(i); *see also Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020) (*en banc*), *cert. granted*, 141 S. Ct. 2850 (2021) (No. 20-979). Notwithstanding this jurisdictional bar, however, we retain jurisdiction to consider "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(B), (D). Constitutional claims or questions of law must be colorable, though, and "a party may not dress up a claim with legal or constitutional clothing to invoke [this Court's] jurisdiction." *Patel*, 971 F.3d at 1272 (*en banc*). Furthermore,

"[w]here a constitutional claim has no merit . . . we do not have jurisdiction." *See Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1333 (11th Cir. 2003), *overruled on other grounds by Patel*, 971 F.3d at 1275–78 (*en banc*).

In order to establish exceptional and extremely unusual hardship to a qualifying relative for purposes of cancellation of removal, "the hardship to an alien's relatives . . . must be substantially beyond the ordinary hardship that would be expected when a close family member leaves this country." *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 62 (BIA 2001) (quotation omitted). This standard requires that cancellation of removal be "limited to 'truly exceptional' situations." *Id.* at 62. Nevertheless, although the standard is high, it is "less than 'unconscionable.'" *Id.* at 60.

Having reviewed the record, we conclude that the IJ and the BIA identified and applied the correct legal standard in this case. The IJ identified the exceptional and extremely unusual hardship standard and cited to several BIA decisions applying that correct standard. The IJ also stated expressly that Sauceda Martinez "need not show that [the requisite] hardship would be 'unconscionable.'" Nothing in the record supports Sauceda Martinez's claim that the IJ erroneously required him to show that the hardship would be unconscionable. Rather, the record establishes that the IJ applied the correct standard, and the BIA adopted and affirmed the IJ's decision. Thus, because Sauceda Martinez's constitutional due process claim has no merit, we lack

8                        Opinion of the Court                    20-13961

jurisdiction to review the petition.  *Gonzalez-Oropeza*, 321 F.3d at 1333.  Accordingly, we dismiss the petition.

**PETITION DISMISSED.**